**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

_____

No. 95-10808
Summary Calendar
_____


ROY LEE McCLUNG, JR., and
CAROL JEAN McCLUNG,

Plaintiffs-Appellants,


VERSUS

DAVID W. HAJEK, et al.,

Defendants,

DAVID W. HAJEK,

Defendant/Appellee.


_____

Appeal from the United States District Court
for the Northern District of Texas
(7:90-CV-120-X)
_____


February 13, 1996
Before KING, SMITH, and BENAVIDES, Circuit Judges.

PER CURIAM:[*]


Roy and Carol McClung appeal a summary judgment in their 42 U.S.C. § 1983 action alleging an unlawful termination. Concluding that reconsideration is needed in light of recent Supreme Court precedent, we vacate and remand.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

The McClungs filed this suit against numerous public officials regarding the termination of Roy McClung's employment. At the time of his termination, Roy McClung ("McClung") was the Chief Adult and Juvenile Probation Officer of the 50th Judicial District of Texas, where Judge Hajek is a district judge. He, along with the county judges of the surrounding counties within the 50th Judicial District, comprise the Juvenile Probation Board. Pursuant to Tx. HUMAN RES. CODE §§ 15.00007 and 15.0008, Judge Hajek terminated McClung's employment, and the Juvenile Probation Board ratified this termination on August 15, 1990.

Following McClung's termination, an internal investigation of the Probation Office was conducted, which ultimately led to Judge Hajek's request for further investigative assistance by the Texas Attorney General's Office. The investigation culminated in McClung's indictment and conviction on four counts of tampering with governmental records, based upon acts that occurred during his tenure as chief probation officer.

Among his other claims, McClung contended that he was terminated because he was involved in a "highly divisive political situation involving Baylor County Sheriff Jerry Barton." McClung states that he was terminated by Judge Hajek because he assisted the district attorney in obtaining the signature of an individual on a petition to remove Barton, who was Judge Hajek's "political ally and friend."

All defendants were dismissed pursuant to motions filed under

FED. R. CIV. P. 12(b)(6).  The McClungs appealed only the dismissal of defendant Hajek on his defense of qualified immunity.  Expressing no opinion as to the viability of the claims, we reversed and remanded only as to McClung's § 1983 First Amendment and malicious prosecution claims and the state law claims.

On remand, the McClungs expressly abandoned all but the § 1983 First Amendment claim.  Hajek filed a supplemental brief in support of the rule 12(b)(6) motion, by now converted to a motion for summary judgment, to which he attached the opinion of the Texas appellate court finalizing McClung's criminal conviction, as well as his own affidavit.  Hajek makes no statement concerning his reasons for terminating McClung, neither admitting nor denying that McClung's political activities formed any part in his motivation.  His affidavit states simply that he was empowered to terminate McClung's employment and did so, that a subsequent investigation led to the criminal charges and conviction, and that McClung's employment would have been terminated in any event upon discovery of the acts which led to the criminal convictions.

In response, McClung submitted his own affidavit in which he noted that his salary was increased from $28,000 when he was hired in 1986, to $55,000 by the time of his termination in 1990 because of pay raised accorded him by Hajek, which McClung views as evidence of Hajek's satisfaction with his work.  He stated that Hajek maintained silence in response to McClung's question as to why his resignation was requested and gave no reason for the dismissal.  (In attachments to McClung's original and amended

3

complaint, however, McClung stated that Hajek had told him that he had lost confidence in McClung.) McClung further states, "I truthfully believe" that a motivating reason for the termination was because he assisted the district attorney with the attempt to have the sheriff of Baylor County, Jerry Barton, removed from office by procuring the signature of a county resident on the removal petition and on an affidavit.

As support for his belief, McClung submitted the deposition of the district attorney involved, Bobby Burnett, who reported that during the proceedings against the sheriff, Burnett had a conversation with Hajek in which Hajek asked whether Burnett had requested McClung's assistance in the civil removal effort. Burnett responded that McClung had volunteered his help, and Hajek mentioned that he "had told [McClung] to stay out of it." Burnett replied that he hoped McClung's involvement would not get him in trouble or jeopardize his employment. Hajek replied that it was one of several instances in which he had had some problems with McClung, "and he said that this might be the last straw, or words to that effect."

Burnett said it was evident that Hajek was not happy with McClung, not just because of the Sheriff Barton matter, but that McClung had not done what the judge told him to in other, unrelated matters. Burnett could not recall other reasons why Hajek was displeased with McClung, "but Roy was a loose cannon, so to speak, he had had problems with a lot of people in the district, and I think the judge indicated that that was part of it." Burnett felt

4

from previous conversations he had had with Hajek that there had been some friction between McClung and Hajek.  The district court granted summary judgment for Hajek, based upon its determinations that McClung would have been fired anyway once his criminal misconduct had been discovered.

II.

For McClung to establish a *prima facie* case on his § 1983 claim that Hajek fired him in retaliation for his protected political activities, he must prove that (1) Hajek was acting under color of state law; (2) McClung's speech activities were protected under the First Amendment; and (3) McClung's exercise of his protected right was a substantial or motivating factor in Hajek's decision to fire him.  *Pierce v. Texas Dept. of Crim. Justice, Institutional Div.*, 37 F.3d 1146, 1149 (5th Cir. 1994), *cert. denied*, 115 S. Ct. 1957 (1995).  The district court did not make any finding as to whether McClung's political activities were a substantial or motivating factor in Hajek's decision to fire McClung, or even, for that matter, whether the assistance McClung rendered the district attorney in the attempted ouster of Sheriff Barton was constitutionally protected conduct.

The district court found that McClung had failed to establish a fourth element of his claim, "that the defendant public employer would [not] have discharged him [] if he had not engaged in the protected speech."  The district court cited a principle announced in *Mt. Healthy City Sch. Dist. Bd. of Ed. v. Doyle*, 429 U.S. 274,

287 (1977), that one who is terminated for legitimate reasons should not be placed in a better position as a result of the exercise of constitutionally protected conduct than he would have occupied had he done nothing.

McClung argues correctly that the district court misapplied the *Mt. Healthy* analysis and should have gone on to examine the facts under the analysis set forth in *McKennon v. Nashville Banner Pub. Co.*, 115 S. Ct. 879 (1995), which addressed the problem of evidence of employee wrongdoing discovered after termination, as in the case at bar.[1]

In *Mt Healthy*, the school board gave several reasons for its decision not to rehire plaintiff.  One of the reasons was the board's disapproval of plaintiff's conduct in calling a radio station about a school policy, which the district court found to be protected by the First Amendment.  The district court had ruled that so long as the constitutionally protected conduct was a substantial or motivating factor in the decision not to rehire, the

---

[1]  *McKennon* was decided during the pendency of the district court proceedings, and the district court at one point stayed the proceedings pending the outcome of *McKennon* in the Supreme Court.  When *McKennon* was decided, Hajek argued that McClung had no remedy, since *McKennon* barred reinstatement and frontpay, and the discovery of McClung's misconduct followed so close in time to his dismissal that there was no claim for backpay.  McClung sought to distinguish *McKennon* in the district court by pointing out that it is an employment discrimination case, not a constitutional tort case; but concluding that, in any event, granting summary judgment against him based upon *McKennon* would be inappropriate because he is entitled to his day in court regardless of the amount of actual damages he could claim, as there is no jurisdictional amount required under § 1983.

Thus, although the parties and the district court were obviously aware of *McKennon*, the district court did not mention the decision in its opinion, except for a footnote stating, "The Court does not reach the issue of whether the after-acquired evidence doctrine precludes Plaintiff's claims."  On appeal, both parties agree that the principles announced in *McKennon* are applicable to this constitutional tort case.

decision could not stand. 429 U.S. at 284. The Supreme Court did not agree that the fact that protected conduct played a substantial part in the decision not to rehire amounts to a constitutional violation. *Id.* at 285. "A rule of causation which focuses solely on whether protected conduct played a part, `substantial' or otherwise, in a decision not to rehire, could place an employee in a better position as a result of the exercise of constitutionally protected conduct than he would have been had he done nothing." *Id.* Initially, the Court held, the burden was properly placed upon plaintiff to show that his conduct was constitutionally protected, and that this conduct was a "substantial" or "motivating" factor in the Board's decision not to rehire him. *Id.* at 287. Plaintiff having carried that burden, the Court remanded for the district court to determine whether the board had shown by a preponderance of the evidence that it would have reached the same decision on plaintiff's reemployment even in the absence of the protected conduct. *Id.*

In the case at bar, the district court should have determined first whether McClung's conduct was protected, and whether it was a substantial factor in Hajek's decision to fire him. Hajek's evidence on summary judgment does not address the question of his motivation in firing McClung at all; the deposition of Burnett submitted by McClung would seem to be sufficient to raise a fact question that Hajek was in part retaliating against McClung for his political activities in the Sheriff Barton matter.

Under *Mt. Healthy*, there is a fact issue as to whether, at the

7

time of the firing, Hajek would have made the same decision even if McClung had not engaged in the (presumably) protected activity. If he would have reached the same decision at that time, there is no constitutional violation, as *Mt. Health* dictates. If Hajek would not have fired McClung at that time, then McClung has succeeded in establishing a constitutional violation. The question then becomes, in the light of the after-acquired evidence of McClung's criminal wrongdoing, whether Hajek would have then terminated McClung based upon that evidence (which the district court determined he would), and what is the appropriate remedy, if any, for the constitutional violation already established by the initial improper termination.

This issue was addressed in *McKennon*, a case decided under the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.*, but whose principles are directly applicable to this case. McKennon alleged she was terminated by her employer, the Banner, because of her age. 115 S. Ct. at 882-83. At her deposition, taken in the course of her lawsuit, she related that, fearing she would soon lose her job, she had copied some confidential documents and brought them home. *Id.* at 883. A few days after these deposition disclosures, the Banner sent McKennon a letter declaring that removal and copying of the records was a violation of her responsi-bilities and advising her (again) that she was terminated. *Id.* The Banner maintained that it would have discharged McKennon at once had it known of her misconduct. *Id.*

For purposes of summary judgment, the Banner conceded that it

8

had discriminated against McKennon because of her age. *Id.* The district court granted summary judgment for the Banner, holding that McKennon's misconduct was ground for her termination and she was not entitled to backpay or other remedies under the ADEA. *Id.* The Supreme Court reversed and remanded, holding that the fact that McKennon's misconduct was a supervening ground for discharge does not make it irrelevant that she was discriminated against. *Id.* at 883-84, 887.

The Court noted that the ADEA is part of a wider statutory scheme, which includes title VII, aimed at protecting employees in the workplace nationwide, reflecting a societal condemnation of invidious bias in employment decisions. 115 S. Ct. at 884.

> Deterrence is one subject of these statutes. Compensation for injuries caused by the prohibited discrimination is another . . . . The private litigant who seeks redress for his or her injuries vindicates both the deterrence and the compensation objectives. . . . It would not accord with this scheme if after-acquired evidence of wrongdoing that would have resulted in termination operates, in every instance, to bar all relief for an earlier violation of the Act.

*Id.* (citations omitted). The Court emphasized that the analysis employed in "mixed-motives" cases like *Mt. Healthy* is not controlling in the after-acquired evidence context. In a case like this one, Hajek "could not have been motivated by knowledge [he] did not have and [he] cannot now claim that the employee was fired for the nondiscriminatory reason" of McClung's misconduct that was not known at the time. 115 S. Ct. at 885. "Mixed motive cases are inapposite here, except to the important extent they underscore the necessity of determining the employer's motives in ordering the

9

discharge, an essential element in determining whether the employer violated the federal antidiscrimination law." *Id.* For purposes of its decision, the Court assumed that the sole reason for McKennon's discharge was her age and that the misconduct was so grave that she would have been fired when her employer learned of it. 115 S. Ct. at 883. Those determinations would have to be made in this case in accordance with *Mt. Healthy* as outlined above.

The Court went on to consider "how the after-acquired evidence of the employee's wrongdoing bears on the specific remedy to be ordered," 115 S. Ct. at 885, concluding that the problem is one to be addressed by the judicial system in the ordinary course of further decisions. *Id.* at 886.

> We do conclude that here, and as a general rule in cases of this type, neither reinstatement nor front pay is an appropriate remedy. It would be both inequitable and pointless to order the reinstatement of someone the employer would have terminated, and will terminate, in any event and upon lawful grounds.

*Id.* The Court also suggested that "[t]he beginning point in the trial court's formulation of a remedy should be calculation of backpay from the date of the unlawful discharge to the date the new information was discovered. *Id.*

Assuming McClung would have been terminated based upon the after-acquired evidence, he still has some remedy for any improperly motivated earlier termination, although the available remedies are circumscribed, as set forth in *McKennon*. He cannot be reinstated, but he may be entitled to backpay for the interim between his actual termination and the time his misconduct was discovered, or to damages as determined by a trier of fact.

10

Accordingly, the decision of the district court is VACATED and the case REMANDED for further proceedings in accordance with *Mt. Healthy* and *McKennon* as described above.